IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
C.A. No.: 5:19-cv-00316

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,

Plaintiff,

vs.

AMRIKA RAMPERSAD,

    Defendant.
_____

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION AND MEMORANDUM FOR SUMMARY JUDGMENT**

    Defendant Amrika Rampersad ("Dr. Rampersad") respectfully replies to Plaintiff Berkshire Life Insurance Company of America's ("Plaintiff") Motion and Memorandum for Summary Judgment. Defendant hopes that she adequately stated her position by way of her own Motion and Memorandum for Summary Judgment [D.E. 33 & 34]. The sole purpose of this response is to address the points raised in the Plaintiff's motion and memorandum and not to rehash, belabor, or be duplicative of any of the arguments presented in her Motion and Memorandum for Summary Judgment.

    As an initial matter, the precise facts of this case are extremely important and date specific. Therefore, Dr. Rampersad will spend the majority of this response in clarifying the relevant facts as misstated and misrepresented in Plaintiff's motion.

**I.**     **All of the events that Plaintiff is attempting to assert represent material misrepresentations by Dr. Rampersad occurred after the policy effective date of June 13, 2017.**

    **A.**   **Dr. Rampersad did not experience a change in occupation prior to the effective date of the policy of June 13, 2017.**

    Dr. Rampersad was actively employed by Riverdale Dental on February 7, 2017, the date

that she applied for disability coverage, and she was actively employed by Riverdale Dental with no immediate plans to change employment. (Appx. Ex. B, Part I, pg. 4). At some point in 2017, Dr. Rampersad's husband had applied for a job in Raleigh, North Carolina. Some time passed between Dr. Rampersad's husband applying for the job in North Carolina and him being offered the job. (Appx. Ex. C at 21:14-16). It is clear, however, that the job was offered at some point in mid-to late-June 2017. (Id. at 17:13-23). Dr. Rampersad continued to be actively employed by Riverdale Dental until at least the end of June 2017. (Appx. Ex. D #1). Her last paycheck from Riverdale Dental was at some point in July 2017. (Id). Further, Dr. Rampersad's residence in Florida continued until at least late-June 2017. (Id. at #5, Ex. C at 18:22-19:6).

Dr. Rampersad answered truthfully when she signed the Declaration of Insurability which stated:

> "The undersigned represents that since the date of the earlier of Part 1 or Part 2 of the Application For Insurance To Berkshire Life Insurance Company of America for the policy identified above (the "Application"), no person proposed for insurance:
>
> . . .
>
> 6. Has had any change in occupation, income, residence, tobacco use or aviation status." (Pl's Appx., Ex. D).

As of June 1, 2017, the date that Dr. Rampersad signed the document, she was employed on a full-time basis with Riverdale Dental, and had not experienced any change in occupation or income.

Dr. Rampersad also answered truthfully when she signed the Policy Delivery Receipt which stated:

> "the Applicant/Insured represents that the statements and answers to the application and any requirement supplements or other documents required as part of the application for the policy were complete and true when made, and that no changes have occurred that would make said statements and answers incorrect or incomplete as of the present date, except as amended or modified in any amendment(s) attached thereto." (Id).

As of the date that Dr. Rampersad signed the document, June 1, 2017, not only was she still employed with Riverdale Dental on a full-time basis, her husband had not yet been offered the job in North Carolina, so to the best of her knowledge, as of June 1, 2017, Dr. Rampersad had no active plans to move to North Carolina or change jobs.

Plaintiff's assertion that Dr. Rampersad did not work full-time again until November 2017 is incorrect. In fact, Dr. Rampersad actively pursued full-time employment upon her move to North Carolina around the first of July 2017. (Appx. Ex. C at 27:14-36:1). She began working shortly after she relocated to North Carolina, working various temporary assignments and performing "hands on" interviews with various practices, sometimes for several days at a time. (Id). She began working with Riccobene Family Dentistry on a per diem basis in August 2017 and, to the best of her knowledge, was working approximately full-time hours during that time. (Id. at 30:4-31:23). She was hired on a permanent basis in November 2017, and officially became a full-time employee. (Id. at 28:22-29:10).

Finally, Dr. Rampersad disputes Plaintiff's allegation that Dr. Rampersad's employment status was material, and it would not have issued the policy if it had known about Dr. Rampersad's change in employment status. First, at the time the policy was issued, Dr. Rampersad was absolutely working on a full-time basis. Second, the policy that Dr. Rampersad became covered under is specifically solicited to dentists. (Appx. Ex. C. at 63:21-64:1). Plaintiff's policy, as sold to Dr. Rampersad, anticipates that there will be situations where dentists who are insured under the policy will change jobs and, in fact, contemplates situations where a dentist will be unemployed while covered and will have the ability to suspend the policy in such an event. Therefore, the policy itself necessarily contemplates that there will be situations wherein a dentist may be planning to change jobs, be between jobs, or not be employed on a full-

time basis. (See Pl's Appx. Ex. D, 5720 Policy, at 9-10). Therefore, Plaintiff's attempted argument that employment and/or a potential change in employment is material to the issuance of the policy is without merit.

Finally, Dr. Rampersad's application for a dental license in North Carolina is not dispositive. Dr. Rampersad testified that she could not recall whether she applied for the license prior to her husband's acceptance of the job in North Carolina or not. (Appx. Ex. C 21:20-23:22). Consequently, Plaintiff cannot definitively show on what date, or for what reason, Dr. Rampersad applied for a dental license in North Carolina.

Dr. Rampersad answered all application questions and signed all forms with information that was true and accurate as of the policy effective date of June 13, 2017. (Appx. Ex. C at 79:16-81:3, 85:2-87:18). Consequently, Dr. Rampersad's employment history and/or status would have had no effect on the issuance of the policy that is the subject of the matter *sub judice*.

### B. Dr. Rampersad did not suffer a workplace accident, nor did she suffer an illness, disease, or injury and, therefore, did not misrepresent any fact.

Sometime before June 13, 2017, Dr. Rampersad was exposed to a patient's blood. (Appx. Ex. C at 47:12-48:4; Ex. E #1). She followed the proper protocols in place for when such incidents happened. (Appx. Ex. C at 48:9-49:3). Obviously, because she is employed as a dentist, she is going to be exposed to patients' bodily fluids on a regular basis. (Id. at 47:6-18). Because being exposed to bodily fluids is part of her job, such exposure can, by no means, be classified as an "accident." And "accident" is an "unforeseen and unplanned event or circumstance."[1] Certainly, exposure to a patient's bodily fluids when one is employed as a dentist is certainly not unforeseen or unplanned. Therefore, the exposure to the patient's blood was by no means a "workplace accident."

---

[1] https://www.merriam-webster.com/dictionary/accident (last accessed on September 24, 2020).

Dr. Rampersad did not seek medical treatment for the exposure. (Id. at 49:4-7). Rather, when she went to a physician for a general physical and well-being checkup, she requested that a blood test be done for exposure to blood-borne pathogens, which she routinely did because of her occupation. (Id. at 50:19-51:2; Appx. Ex. D #2). In fact, rather than, as Plaintiff asserts, attempting to be misleading, on her application, Dr. Rampersad readily disclosed that she "had annual physicals & routine checkups." (Appx. Ex. B, Part II, pg. 4). Plaintiff certainly cannot deny that it was aware of this fact.

Again, Dr. Rampersad did not misrepresent any fact relating to the blood exposure and signed the Declaration of Insurability truthfully. The Declaration of Insurability stated:

> "The undersigned represents that since the date of the earlier of Part 1 or Part 2 of the Application For Insurance To Berkshire Life Insurance Company of America for the policy identified above (the "Application"), no person proposed for insurance:
>
> . . .
>
> 1. Has had any disease, illness, or injury." (Pl's Appx., Ex. D).

The blood exposure that Dr. Rampersad experienced was not a disease, illness, or injury. Dr. Rampersad was not damaged or hurt, did not suffer an illness, and did not contract a disease from the blood exposure. Therefore, Dr. Rampersad did not make any misrepresentation to Plaintiff by failing to disclose the blood exposure because that was not one of the questions or representations that Plaintiff inquired about. Consequently, the blood exposure would have had no effect on the issuance of the policy that is the subject of the matter *sub judice*.

### C. Dr. Rampersad did not make any misrepresentation regarding her right ankle injury, because the right ankle injury occurred after the effective date of June 13, 2017.

Unfortunately, while preparing to move to North Carolina, Dr. Rampersad tripped and fell, injuring her right ankle. (Appx. Ex. C at 39:12-41:3, 41:22-42:11, 45:21-46:11, 52:3-19).

While Plaintiff is correct that Dr. Rampersad does not remember when the injury occurred, it is a misstatement of the facts to allege that the injury occurred no later than June 2017. The trip and fall accident that Dr. Rampersad suffered was acute in nature, thereby requiring urgent, if not immediate, medical care. (Id. at 40:24-41:3, 41:22-25, 46:4-6, 52:14-19). In fact, Dr. Rampersad sought treatment within days of the accident, on June 26, 2017. (Id). Consequently, based on the evidence in this case, it is reasonable to assume that Dr. Rampersad suffered the right ankle injury within a few days immediately prior to June 26, 2017.

Dr. Rampersad signed the "delivery requirements" truthfully because as of June 1, 2017 she had not suffered the trip and fall accident. Therefore, Dr. Rampersad made no misrepresentations to Plaintiff as it relates to the right ankle injury. Consequently, the right ankle injury would have had no effect on the issuance of the policy that is the subject of the matter *sub judice*.

## II. Dr. Rampersad did not reject the 5720 policy and request a new policy, rather, it was requested that the policy date be changed, and Plaintiff never informed her that a new policy would need to be issued.

Dr. Rampersad has already addressed the change of policy date in her Memorandum in Support of Motion for Summary Judgment and, therefore, will not re-address that issue here. Dr. Rampersad will address Plaintiff's assertion that she rejected the 5720 policy. Dr. Rampersad did not contact Plaintiff in order to "skip" premiums. Rather, Dr. Rampersad contacted Plaintiff, by and through its agent, because she had two months of premiums withdrawn from her account. (Appx. Ex. C at 74:10-76:25; Ex. G). She inquired as to whether the policy date could be changed such that it would fix the premium issue. (Id). Plaintiff asserts that policy dates do not change after policy has been placed into force, but that a new policy will be issued if a change is requested in the first ninety (90) days. With Dr. Rampersad, however, Plaintiff took a

Page 6 of 15
Case 5:19-cv-00316-D   Document 47   Filed 09/25/20   Page 6 of 15

completely contrary position. There can be no doubt that Plaintiff advised Dr. Rampersad that the effective date of the policy could, in fact, be re-dated to June 13, 2017. (Appx. Ex. H). There can also be no doubt that Plaintiff was never advised that in order to re-date the 5720 policy it would be deemed rejected and a completely new policy would be issued. (Id). In fact, Plaintiff advised the exact opposite. As noted in her brief, Plaintiff only ever used words such as "re-date," "re-issue," "re-sign," all representing that Dr. Rampersad would be repeating something already done, rather than doing something entirely new. Further, Dr. Rampersad was never told that in order to re-date the policy to June 13, 2017 she would be rejecting the policy already in force and a new policy would be issued. Plaintiff can cite to no supporting evidence for that assertion and, in fact, the evidence in this case can only point to the fact that Plaintiff advised that the "true effective date" of the policy was June 13, 2017 and that the existing policy was simply going to be re-issued with a new policy number reflecting the "true effective date."

## III. Dr. Rampersad completed the July 25, 2017 delivery requirements with information that was true and accurate as of the policy's effective date of June 13, 2017, therefore, there is no misrepresentation.

Plaintiff's argument that Dr. Rampersad did not sign the July 25, 2017 delivery requirements truthfully is without merit. For reasons already discussed in Dr. Rampersad's Memorandum in Support of Motion for Summary Judgment, the true effective date of the policy is June 13, 2017. That is the date that Plaintiff advised, on numerous occasions, is the policy's "true effective date" because that is the day that Dr. Rampersad began paying premiums for coverage. (Appx. Ex. H). Therefore, when she signed the July 25, 2017 delivery requirements she did so with information that was true and accurate as of June 13, 2017. (Appx. Ex. C at 79:16-81:3, 85:2-87:18). Certainly, events happened between June 13, 2017 and July 25, 2017, however, those events did not need to be disclosed to Plaintiff because the policy effective date

is June 13, 2017. None of the events Plaintiff is attempting to use to support a claim for misrepresentation had happened at the time Dr. Rampersad applied for coverage, signed the "delivery requirements" on June 1, 2017, or had occurred as of the June 13, 2017 effective date. Plaintiff's agent, Matthew Fine, gave her a copy of the documents that needed to be re-signed with the date already filled out, and he told Dr. Rampersad to sign them. (Id. at 84:1-10). Dr. Rampersad informed Plaintiff's agent of the changes in her situation. Plaintiff's agent advised her not to change anything on the forms and just to re-sign them because the effective date of the policy was June 13, 2017. (Id. at 80:24-81:2). Therefore, Plaintiff's agent advised Dr. Rampersad that she only needed to disclose information that was true and accurate as of that date.

It is readily apparent from the evidence in this case that Dr. Rampersad was more than forthcoming with information that she believed needed to be disclosed to Plaintiff. (See Appx. Ex. B, Part II, pg. 2-4). This is not a case where a person marked a blanket answer of "no" to all of the questions on the application. Rather, this is a case where Dr. Rampersad was readily transparent in disclosing relevant information. In fact, Plaintiff issued the policy with a rider excluding disabilities related to her left foot based on Dr. Rampersad's disclosures in the application for insurance. (Pl's Appx. Ex. D). If the policy effective date was anything other than a June 13, 2017 Dr. Rampersad would have disclosed the information that Plaintiff is now attempting to use to prove misrepresentation. It would make no sense for Dr. Rampersad to be 100% transparent on an application for insurance and then, all of a sudden, completely "switch gears" and decide to misrepresent information.

Dr. Rampersad made no misrepresentations because the effective date of the policy is not July 25, 2017 but, rather, June 13, 2017. This is not a situation where Dr. Rampersad is

attempting to use parole evidence to alter the terms of the policy, rather, this is an instance where Plaintiff is attempting to, essentially, disagree with itself. The policy date is listed as June 13, 2017, Dr. Rampersad signed the policy delivery requirements on June 1, 2017, and they were transmitted to Plaintiff on June 12, 2017. Dr. Rampersad began paying premiums on June 13, 2017. Therefore, there can be absolutely no doubt that the policy effective date is June 13, 2017. Following Plaintiff's logic, Dr. Rampersad would, in effect, be bound to pay premiums for coverage that she did not have unless and until Plaintiff decided to deliver a copy of the policy to her. Such would result in Plaintiff's being unjustly enriched by retaining premiums for coverage it did not provide.

Dr. Rampersad could not make any misrepresentations to Plaintiff because everything that she disclosed was true and accurate as of the policy's effective date of June 13, 2017.

### IV. Plaintiff intentionally misrepresented certain relevant facts to this Court regarding information contained in the original application for coverage.

Plaintiff made material misrepresentations to this Court regarding the information contained in the original application for insurance. In its statement of facts, Plaintiff asserted:

> "14. The Medical History also asked, "In the past ten years, have you been diagnosed or treated for . . . any disease or disorder of the joints, limbs, or muscles;" "Other than previously stated in this [Medical History], have you . . . within the past 12 months had any diagnostic test(s) performed (except for HIB or AIDS);" **"Other than previously stated in this [Medical History], have you . . . within the past 5 years had a physical exam or check-up of any kind; "Other than previously stated in this [Medical History], have you within the past 5 years . . . been a patient in a hospital, clinic, or other medical or mental health facility?" Dr. Rampersad answered "No" to all of these questions. [App's Ex. C (Medical History) at 2 ¶ C5, 3 ¶¶ E1, E2, E3]"** (Pl's Rule 56.1 Statement of Material Facts, D.E. 37, #14)(emphasis added).

This statement by Plaintiff is clearly and unequivocally wrong. The application unquestionably shows that Dr. Rampersad answered "yes" to questions E2 and E3. The application stated:

"E. Other than previously stated in this Application for Insurance Part II, have you:

. . .

"2. Within the past 5 years had a physical exam or check-up of any kind?"

Dr. Rampersad answered: "Yes."

"3. Within the past 5 years, received medical advice or counseling from physician(s), medical or mental health professional(s), counselor(s), psychotherapist(s), chiropractor(s), or other practitioner(s), or have you been a patient in a hospital, clinic, or other medical or mental health facility?"

Dr. Rampersad answered: "Yes."

Plaintiff redacted the answers to these questions on the copy of the application that was filed with the Court, attached as Exhibit C to its Appendix. In redacting the information, Plaintiff stated:

> "Portions of these documents containing sensitive personal, financial, or medical information have been redacted to protect Dr. Rampersad's privacy. **The redactions are not pertinent to the issues in this case**, and Dr. Rampersad has unredacted copies of these documents. Berkshire will file unredacted versions of these documents under seal if requested by the Court or Dr. Rampersad." (Pl's Appx., D.E. 38)(emphasis added).

Dr. Rampersad has attached an unredacted true and accurate copy to her response to Plaintiff's statement of material facts to show the Court her real answers.

Further, on page 4, Dr. Rampersad provided an explanation as to why she answered "Yes" to the questions that she did. (Appx. Ex. B, Part II, pg. 3-4). Not only did Plaintiff misrepresent the contents of the application to this Court, it then proceeded to redact the answers to the questions on the version of the application that it filed with this court.

Unfortunately, Dr. Rampersad can only assume that such action on the part of Plaintiff was made to intentionally mislead this Court by alleging that Dr. Rampersad responded to questions in the negative when she, in fact, responded in the positive. Particularly in a case such as the *sub judice* the entire "linchpin" of Plaintiff's purported argument is that Dr. Rampersad

misrepresented facts on her application, it is imperative that the application and the answers that Dr. Rampersad provided thereon be represented with 100% accuracy to this Court. Further, despite Plaintiff's assertion to the contrary, the answers to those application questions most certainly are "pertinent to the issues in this case" and Plaintiff is using Dr. Rampersad's responses to those questions to base its argument that she made misrepresentations on the application and, therefore, the policy should be rescinded. Such misrepresentation by Plaintiff and its counsel cannot be an innocent error. Plaintiff's counsel had the application, had more than ample opportunity to review the application, and had to necessarily review the entirety of the application when preparing for the filing of dispositive motions in this case. Even so, Plaintiff's counsel not only made a completely false and incorrect representation to this Court, Plaintiff's counsel then redacted the information that it incorrectly cited. Plaintiff, through counsel, misrepresented a document it states supports its position while, at the same time, preventing the Court from reviewing that information. Such actions are egregious and could only be done with the specific intent to mislead this Court.[2]

## CONCLUSION

For the reasons outlined above, and in her previously filed to Motion and Memorandum for Summary Judgment, Dr. Rampersad respectfully requests that this Court grant her Motion and Memorandum for Summary Judgment.

s / M. Leila Louzri_____
M. Leila Louzri, Esq.
N.C. Federal Bar #: 48743
Nathaniel W. Bax, Esq.

---

[2] Dr. Rampersad's undersigned counsel has notified Plaintiff's counsel of their misrepresentation to the Court. Defendant will provide Plaintiff twenty-one (21) days before proceeding with a Motion for Sanctions pursuant to Rule 11. Should the Court wish to set a different time period pursuant to Rule 11(c)(2), Dr. Rampersad will be happy to follow the Court's directive.

*Pro Hac Vice*
**FOSTER LAW FIRM, L.L.C.**
Post Office Box 2123
Greenville, South Carolina 29602
(864) 242-6200
(864) 233-0290 (facsimile)
E-mail:  llouzri@fosterfoster.com
            nbax@fosterfoster.com

Attorneys for Defendant

Dated:  September 25, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
C.A. No.: 5:19-cv-00316

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,

Plaintiff,

 vs.

AMRIKA RAMPERSAD,

 Defendant.
_____

## CERTIFICATE OF COMPLIANCE

This is to certify that the Defendant's Response in Opposition to Plaintiff's Motion and Memorandum for Summary Judgment complies with Local Rule 7.2(f)(3) and contains 3,539 words as counted by Microsoft Word.

 s/ M. Leila Louzri_____
 M. Leila Louzri, Esq.
 North Carolina Bar #: 48743
 Nathaniel W. Bax, Esq.
 *Pro Hac Vice*
 FOSTER LAW FIRM, LLC
 PO Box 2123
 Greenville, SC 29602
 (864) 242-6200
 (864) 233-0290 (facsimile)
 E-mail: llouzri@fosterfoster.com

 Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### C.A. No.: 5:19-cv-00316

BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,

Plaintiff,

    vs.

AMRIKA RAMPERSAD,

    Defendant.

_____

## CERTIFICATE OF SERVICE

    I hereby certify that on September 25, 2020, I electronically filed the foregoing Defendant's Response in Opposition to Plaintiff's Motion and Memorandum for Summary Judgment with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to:

James A. Dean
N.C. State Bar No. 39623
Ryan H. Niland
N.C. State Bar No. 49430
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC 27101
Phone: (336) 721-3600
Email: Jamie.Dean@wbd-us.com
       Ryan.Niland@wbd-us.com

                                                   s/ M. Leila Louzri
                                                   M. Leila Louzri, Esq.
                                                   N.C. Federal Bar #: 48743
                                                   Nathaniel W. Bax, Esq.
                                                   *Pro Hac Vice*
                                                   **FOSTER LAW FIRM, L.L.C.**
                                                   Post Office Box 2123
                                                   Greenville, South Carolina 29602
                                                   (864) 242-6200
                                                   (864) 233-0290 (facsimile)
                                                   E-mail: llouzri@fosterfoster.com

nbax@fosterfoster.com

Attorneys for Defendant

Dated: September 25, 2020