IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-00316-D

| | |
|---|---|
| BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AMRIKA RAMPERSAD,<br><br>Defendant. | **MEMORANDUM IN OPPOSITION TO DR. RAMPERSAD'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56** |

Berkshire Life Insurance Company of America ("Berkshire") submits the following Memorandum in Opposition to Amrika Rampersad's Motion for Summary Judgment [D.E. 33].

Dr. Rampersad signed disability insurance application documents despite knowing that they contained material misrepresentations about her health and employment. To escape these undisputed facts, Dr. Rampersad argues (without citing any authority) that her material misrepresentations are excused because her agent said it was okay to conceal the truth from Berkshire. Dr. Rampersad's arguments ignore the plain language of the documents she signed, black letter contract and insurance law, and the undisputed facts of this case. In any event, the Court does not need to address Dr. Rampersad's arguments. There is no genuine dispute that, before she signed the first policy receipt documents, Dr. Rampersad had already gotten a patient's blood in her eyes and planned to move to North Carolina. Thus, even accepting Dr. Rampersad's arguments about her subsequent signatures for the new policy, Berkshire could still rescind based on Dr. Rampersad's material misrepresentations about her health and employment.

1

# ARGUMENT

### A. The Court need not address Dr. Rampersad's arguments because she previously misrepresented material facts about her health and employment status.

Dr. Rampersad devotes her entire motion to issues the Court need not reach. Specifically, Dr. Rampersad's motion depends on treating the 4950 and 5720 policies as one and the same, with a June 13, 2017, effective date. Even if this were true — it is not — Berkshire would still be entitled to rescind. There is no genuine dispute that, as of June 13, 2017, Dr. Rampersad had recently gotten a patient's blood in her eyes and planned to quit her job. [D.E. 37 ¶ 20–29] Nor is there any dispute that, had Dr. Rampersad disclosed this information to Berkshire, Berkshire would not have issued the 4950 (or 5720) Policy as it did. [*Id.* ¶¶ 48, 52–53, 77–78] Thus, even accepting Dr. Rampersad's arguments, Berkshire would still be entitled to rescind based on Dr. Rampersad's material misrepresentations about her health and employment status.

### B. Dr. Rampersad ignores the plain language of the documents she signed, black letter law, and the undisputed facts of this case.

Rather than addressing her blood exposure and planned job change,[1] Dr. Rampersad devotes her entire motion to arguing that the 4950 Policy took effect as of June 13, 2017. But the 4950 Policy did not even exist until the following month. Nevertheless, Dr. Rampersad argues (1) she was never told that the 4950 Policy was new or different than the 5720 Policy; (2) her agent, Matthew Fine, gave her permission to conceal information about her health and employment status; and (3) Berkshire internally acknowledged that the 4950 Policy took effect on June 13. Dr. Rampersad cites no legal authority for these arguments, and with good reason: her arguments ignore, respectively, the plain language of the documents she signed, black letter contract and insurance law, and the undisputed facts of this case.

---

[1] Dr. Rampersad also concealed a severe right ankle injury she suffered at some point in June, but she does not remember if this injury occurred before or after June 13. [D.E. 37 ¶ 36]

Dr. Rampersad's first argument – that she was never told she was taking out a new policy – ignores the plain language of the documents she read and signed. Dr. Rampersad read and signed the Employment History and Medical History, as well as Amendments, Delivery Receipts, and Declarations of Insurability for both the 5720 Policy and the 4950 Policy. [D.E. 37 ¶¶ 11, 16, 41, 44, 47, 67, 70, 73] The delivery documents facially relate to two, separate policies. [*Compare* D.E. 38-09, 38-10, 38-11 *with* D.E. 38-13 at 8–12 (listing different policy numbers)]. These documents also clearly set out when coverage would begin under each policy. [*See* D.E. 38-2 at 9 ¶ 6 ("[N]o insurance shall take effect unless and until the policy is delivered, the first premium is paid, and there has been no change in the health, the income level, status of employment or occupation of the proposed insured.")].[2] Finally, these documents make it clear that neither Berkshire's employees nor Dr. Rampersad's agent had authority to modify the terms of any contract and that modifications would need to be signed by a Berkshire officer and attached to the policy itself. [*Id.* at 9 ¶ 3 ("No agent, broker, or medical examiner has any right to accept risks, make or change contracts, or to waive or modify any of the Company's rights or requirements."); D.E. 38-4 at 23 ("The Policy with any application(s), Schedule Pages, and any attached riders, amendments, or endorsements make up the entire contract. No change in the Policy will be valid unless it has been endorsed on, or attached to, the Policy in writing by the president, a vice president, or the secretary of Berkshire Life.")]. There is simply no way to square Dr. Rampersad's assertion with the plain language of the documents she reviewed and signed.

---

[2] The context in which she signed these documents also made this clear. Dr. Rampersad believed that Berkshire overcharged her for premiums. [D.E. 38-1 at 75:23-76:17] That belief was incorrect; Berkshire appropriately drafted her premiums and sent a notice explaining the "double draft." [D.E. 37 ¶ 55-58] In any event, Dr. Rampersad knowingly signed documents that listed a new policy number and required her to disclose updated information about her health and employment. She cannot explain why such a convoluted procedure would be necessary if Berkshire were simply issuing a refund of overcharged premiums. [D.E. 38-1 at 77:1-23]

3

Dr. Rampersad tries to avoid this plain language by blaming her agent, Matthew Fine, but that contradicts black letter contract and insurance law. Parties are charged with knowledge of contracts they sign, particularly when given an opportunity to review the documents in advance. *See, e.g.*, *Goodwin v. Investors Life Ins. Co. of N.A.*, 332 N.C. 326, 330–31, 419 S.E.2d 766, 768 (1992) ("Plaintiff and her husband signed the application thereby representing that they had read it and that the information contained therein was true. The law presumes that the plaintiff knew the contents of the application she signed; she has asserted nothing to justify her ignorance."). Parol evidence cannot be used to contradict the written document's plain language. *See, e.g.*, *Van Harris Realty, Inc. v. Coffey*, 41 N.C. App. 112, 115, 254 S.E.2d 184, 186 (1979) (noting that parol evidence may not be used to "vary, add to, or contradict a written instrument"). These general rules apply with equal force in the insurance context; an insured cannot escape rescission simply because her agent filled out the application documents or failed to properly explain the process. *See, e.g.*, *Simpson v. Life Investors Co. of America*, 367 F. Supp. 2d 875, 879–80 (M.D.N.C. 2005) (rescission appropriate where insured had opportunity to review application documents, regardless of agent's potential negligence). Nothing Matthew Fine said could overturn the plain language of a contract Dr. Rampersad reviewed and signed, particularly because that language made it clear that Fine lacked authority to modify the contract or waive Berkshire's requirements.

Finally, Dr. Rampersad mistakenly (and repeatedly) asserts that Berkshire acknowledged June 13 as the 4950 Policy's "true effective date." [D.E. 34 at 4, 6, 13, 14, 15, 18] Berkshire noted (correctly) that the **5720 Policy's** "true effective date" was June 13; it never said that the 4950 Policy took effect that day. [D.E. 41-07] Berkshire also told Fine that, in order to skip a payment, Dr. Rampersad would need to take out a new policy and sign new documents. [*Id.* at 1–2]

4

Case 5:19-cv-00316-D   Document 48   Filed 09/25/20   Page 4 of 6

## CONCLUSION

There is no dispute that Dr. Rampersad signed documents she knew contained misrepresentations about her health and employment status. Her attempts to avoid this fact ignore the plain language of the contracts she signed, black letter law, and the actual facts of this case. Moreover, regardless of what happened in July, there is no genuine dispute that Dr. Rampersad misrepresented her health and employment status as of June 13, 2017. Those misrepresentations, by themselves, provide a sufficient basis for rescission, even if one accepts Dr. Rampersad's argument that the two policies are one and the same. Dr. Rampersad's counterclaim should be dismissed, and the Court should enter summary judgment in Berkshire's favor on the declaratory judgment claim.

Respectfully submitted this the 25th day of September, 2020.

/s/ Ryan H. Niland
James A. Dean
N.C. State Bar No. 39623
Ryan H. Niland
N.C. State Bar No. 49430
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC  27101
Phone: (336) 721-3600
Fax: (336) 721-3660
Email:  Jamie.Dean@wbd-us.com
              Ryan.Niland@wbd-us.com

Attorneys for Plaintiff Berkshire Life Insurance Company of America

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

The undersigned certifies that the foregoing complies with the word limits in Local Rule 7.3(f) and contains 1,388 words, as counted by the word counting feature on Microsoft Word.

/s/ Ryan H. Niland
James A. Dean
N.C. State Bar No. 39623
Ryan H. Niland
N.C. State Bar No. 49430
Womble Bond Dickinson (US) LLP
One West Fourth Street
Winston-Salem, NC  27101
Phone: (336) 721-3600
Fax: (336) 721-3660
Email:  Jamie.Dean@wbd-us.com
            Ryan.Niland@wbd-us.com

Attorneys for Plaintiff Berkshire Life Insurance Company of America
